## VIRGIL H. COLLINS, ADMINISTRATOR, *v.* CITY OF BURLINGTON AND TOWN OF SOUTH BURLINGTON.

### *Consideration. Soldier's Bounty. City of Burlington. Charter. Parties.*

The voluntary re-enlistment of a soldier to the credit of a town, thereby diminishing its quota, is a good consideration for a subsequent promise by the town to pay him a bounty, but in itself imposes no legal obligation upon the town to pay the bounty.

A town has a right to attach conditions to a promise to pay a bounty; and where the vote reserved to the selectmen, as a condition, in the case of deceased soldiers, the right to direct to which of the intestate's representatives, or other person, the bounty should be paid, no one could legally claim it until the selectmen had determined that that particular individual should receive it.

The town of Burlington voted money for bounties, and subsequently, by an act of the Legislature, was divided into the City of Burlington and the Town of South Burlington, and the selectmen placed the money in the hands of a trustee to hold for the persons who should be entitled to it, and he, after paying bounty to six soldiers, paid the residue to the Town of South Burlington and the City of Burlington, the selectmen never having designated the plaintiff as one to whom a bounty was due, although they had the right to do so under the vote: *held* that the plaintiff was not entitled to recover the bounty.

*Held* that if the plaintiff's right to bounty were conceded, he could not maintain an action therefor against the Town of South Burlington and City of Burlington jointly.

Collins, administrator, *v.* City of Burlington and Town of South Burlington.

ASSUMPSIT. Plea, the general issue. Trial by Court, at the September term, 1870, STEELE, J., presiding, on a case stated, and judgment *pro forma* for the plaintiff. Exceptions by the defendants.

Augustus H. Collins, the plaintiff's intestate, enlisted into the United States service on the 14th day of September, 1861, to the credit of the town of Stowe, for three years, as a private in company G in the 2d regiment Vermont volunteers. On the 31st day of January, 1864, he re-enlisted and was mustered into the United States service as a veteran soldier. Under the expectation of receiving a bounty of three hundred dollars, he caused his name to be placed to the credit of the town of Burlington, and he was so credited to that town on the books and records in the office of the Adjutant General of the State of Vermont, within a few days after such re-enlistment, being as soon thereafter as the fact of such re-enlistment could be communicated to the Adjutant General, and after such credit he was counted towards some quota of the town of Burlington which had been assigned previous to the vote hereinafter recited. Soon after his re-enlistment he came home to his friends in Vermont on a furlough. While at home on such furlough, and while in the service of the United States, he died, at the house of one Josephus Morse in Stowe, on the 19th day of April, A. D. 1864, leaving no widow, child, father, mother, brother or sister, and his next of kin were two uncles on his father's side, James H. Collins and Virgil H. Collins, the plaintiff, and an uncle on his mother's side, Alexander Noble.

On the 18th of January, 1865, the town of Burlington, in town meeting, passed the following vote:

" *Resolved,* 1st, That the town of Burlington will pay a bounty of $300 to each soldier who has re-enlisted in regiments in the field as a veteran, and stands credited to said town, and that the selectmen be and are hereby authorized and directed to draw orders on the town treasurer for the payment of such bounties, and the selectmen shall pay such bounty to such soldier, his order or his family, or for the use of such family, if he has one; and if deceased without family, to such representative or representatives or person as the selectmen shall, in their discretion, deem most
3

just and equitable : *Provided* that such bounty shall be paid to no one who has actually deserted the service, and that any money heretofore advanced toward such bounty by the selectmen shall be considered and deducted from such bounty of $300."

At this same town meeting of January 18th, 1865, it was voted to accept the charter of the city of Burlington, passed by the Legislature at its October session, 1864, and approved November 22, 1864, which is referred to, by which vote of acceptance the town of Burlington was divided into the city of Burlington and the town of South Burlington, and the town of Burlington ceased to exist on the 21st day of February, 1865, when the governments of the city of Burlington and the town of South Burlington were respectively organized.

At the time the town of Burlington so ceased to exist, seven of the veteran re-enlisted soldiers, whose names, on the 18th of January, 1865, stood to the credit of the town of Burlington, among them the plaintiff's intestate, had not applied to the selectmen for any bounty under the vote of that date, and the selectmen, in view of the town ceasing to exist, and because they were ignorant where the seven men were, or whether they were living, and whether they were properly entitled to a bounty or not, set apart of the funds of the town $2100, being the bounty which, if they were all entitled to bounty under that vote, would be due to them, and placed it in the hands of Carolus Noyes, one of the selectmen, to hold in trust for such persons as should be entitled to the same under that vote, and if no person was so entitled to the same, that Noyes should refund it to the city of Burlington and town of South Burlington, in their proper proportions of the assets of the town of Burlington.

Mr. Noyes, for the safe keeping of the moneys so placed in his hands in trust, in a short time after he received the same, deposited them in bank in his own name as trustee, he and the other selectmen being still ignorant where these men were, or whether they were living. From time to time thereafter, these seven men personally applied for and received their shares of such moneys, with the interest that had accrued thereon while in the bank, except the plaintiff's intestate.

In the latter part of 1866, one James H. Collins, the uncle of Augustus, applied to Mr. Noyes for his nephew's share of such moneys, and showed that Augustus had died as before stated, and claimed that he, by reason of his alleged poverty, was, of all the relatives of Augustus, the best entitled to this fund or bounty.

Mr. Noyes conferred with his associate selectmen in regard to James H. Collins' claim, and they agreed, in their discretion, not to allow the claim, and the money remained as above stated until January, 1868, when, desiring to close his trust, Mr. Noyes paid over to the defendants, in the proportion in which the assets of the town of Burlington belonged to them respectively, the amount of the funds remaining in his hands, with the accumulated interest, being $369.16, and the defendants still hold the same.

*Wales* and *Taft*, for the defendants.

*G. W. Kennedy*, for the plaintiff.

The opinion of the court was delivered by

Ross, J.  I.  It is conceded that no right to a bounty from the town of Burlington had accrued to the intestate till the passage of the resolution, January 18, 1865.  He had re-enlisted into the service of the United States as a veteran soldier, to the credit of the town, and thus relieved the town from furnishing one of the quota which had been assigned to it.  This service, voluntarily rendered, was a good consideration for a subsequent promise by the town to pay him a bounty, but, of itself, imposed no legal obligation upon the town to pay him such a bounty.  The obligation of the town to pay the bounty arises, entirely, from the promise in the resolution. In assuming the obligation, the town had the right to attach to it such conditions as it saw fit.  The intestate and his representatives, if they would avail themselves of the bounty granted by the resolution, must take it cumbered with the conditions therein imposed.  One of the conditions imposed was, that in the case of deceased soldiers the selectmen should have the right to direct to whom of the intestate's representatives, or, to what other person, the bounty should be paid.  No one of such

representatives could legally claim the bounty until the selectmen of the town, in their discretion, in accordance with the resolution, determined that the bounty should be paid to that particular individual. The selectmen have, to the present time, never exercised the discretion thus reposed in them, nor determined that the bounty thus voted belonged to, or should be paid to, the administrator of the intestate, for any purpose whatever. Hence no right of action has accrued to the plaintiff, as such administrator. We have no occasion to inquire whether the condition, reposing in the selectmen the power to decide to whom the bounty should be paid, in case the soldier had deceased without a family, was wise or foolish, reasonable or unreasonable. The town, in voting the bounty, had the right to vest the power of deciding to whom it should be paid, in case of the soldier's decease, in its selectmen ; and having done so, in order to recover, the plaintiff must show that the selectmen have, in their discretion, decided that he, as administrator, is entitled to the money. This he has failed to do, and hence failed to show a state of facts which would entitle him to recover against the town of Burlington even.

II. The plaintiff claims that, inasmuch as the town placed $2100 in the hands of Mr. Noyes to pay the bounties voted, and he has paid the residue of that sum, after having paid six of the soldiers included in the resolution, partly to the city of Burlington, and partly to the town of South Burlington, that he can maintain this action against the city and town for that money. But, as we have said, by the terms of the resolution and the failure of the selectmen to take action under it in favor of the plaintiff, the right has never accrued to this plaintiff to recover any part of that sum from the town of Burlington, much less from Mr. Noyes, or from those to whom Mr. Noyes has paid it. If we concede the plaintiff's right to the money in the hands of these defendants, he could not maintain an action therefor against them jointly. Whatever part of that sum each defendant may have received, it received for itself, and not for itself and the other defendant. If the town of South Burlington received a ninth of the sum, it did not thereby render itself liable to pay the whole sum, but only that part of the sum which it received. The same is true in re-

gard to the sum received by the city of Burlington. The city would be liable, if liable at all, for so much as it received, and no more. The plaintiff would not have the right to have judgment against either or both defendants for the whole sum. On looking into the act by which the town of Burlington was divided into the town of South Burlington and the city of Burlington, we find nothing which renders the defendants, jointly or otherwise, liable for the contracts and promises of the town of Burlington. Each has a separate corporate existence, and is liable for its separate contracts only. In no view of the case is the plaintiff entitled to a judgment against these defendants.

The *pro forma* judgment of the county court for the plaintiff is reversed, and judgment on the agreed case is rendered for the defendants to recover their costs.