PETER W. CARLEY *v.* THE TOWN OF HIGHGATE.

*Soldier's Bounty. Selectmen.*

The defendant town voted to pay a bounty of $300 to each man who had enlisted, or should enlist, into the *old* regiments, to fill the quota of the town under a given call. The plaintiff enlisted into a *new* regiment, but was actually applied on the quota named in the vote. *Held,* that he could not recover the bounty.

*Held,* also, that an *intention* on the part of the plaintiff to comply with the offer made by said vote, was not a *compliance;* and that the selectmen of the town could not make a different contract, or waive a material condition in the offer of the town.

ASSUMPSIT to recover a town bounty. Plea, the general issue, and trial by the court, April term, 1872, ROYCE, J., presiding.

The resolution set out in the opinion was passed by the town, December 17, 1863. A week or ten days before the plaintiff was mustered into service, Noah Bates, then one of the selectmen of Highgate, came to the camp of the 17th regiment at St. Albans, and there promised the plaintiff, and others, a bounty of $300 each, if they would go on the defendant's quota, and promised the plaintiff that the bounty should be paid to him before he left the state. The plaintiff introduced testimony tending to show that he demanded said bounty before the commencement of this suit. The other facts sufficiently appear in the opinion. The court rendered judgment for the plaintiff to recover the bounty offered by said resolution. Exceptions by the defendant.

*Fitch & Newton* and *H. S. Royce,* for the defendant.

*Edson & Rand* and *H. A. Burt,* for the plaintiff.

The opinion of the court was delivered by

REDFIELD, J. This was an action of assumpsit to recover a bounty. The promise relied upon is founded upon the following resolution of the defendant town, viz. :

" Resolved that the town of Highgate raise a tax on the grand list of one dollar and twelve cents on the dollar, to be paid by the selectmen of the town of Highgate to men that may be mustered into the United States military service, in the sum of $300 to each man that enlists, or has enlisted, in the *old regiments,* to fill the

36

quota of twenty men under the last call of the president for 300,-000 men; or to pay them that may be drafted, said sum, who go, or procure a substitute to go in their stead."

The plaintiff enlisted and was mustered into " Company A, 17th Vt. volunteers," January 5, 1864, and was actually applied on the quota named in the resolution of the town. The 17th was a new regiment, and the vote pledged the bounty to those men " enlisted into the *old* regiments, to fill the quota."

It was competent for the town to prescribe the terms and conditions upon which the bounty should be paid. *Collins* v. *Burlington*, 44 Vt. 16. The party accepting the offer must comply with those conditions, if he would have the benefit of the offer. It is not for the court to determine whether *express* stipulations in a contract were deemed important or otherwise. It is the province of the court to interpret and enforce contracts as the parties have made them. Until " General Order No. 6," dated Dec. 21st, 1863, the towns had been instructed by the adjutant general that enlistments into new regiments would not count, or be applied on the quota of towns, under the call of the president for 300,000 men; and in that order the towns were distinctly notified that " there was no reasonable prospect" that enlistments into the 17th regiment could be credited on said quotas. The draft was impending, to be enforced on the 5th January next following the requisition; and the towns were urgently pressed to fill the several quotas, and thus restore to efficiency the shattered regiments in the field. It may well be conceived that motives, other than a mere dogged compliance with the requisition, to escape the draft, may have moved citizens to fill up the old regiments, and thus give succor and support " to the remnant that is left " in the decimated ranks of their brethren in the field. Such motives would have been natural, patriotic, and honorable. But we need not speculate, as the rule of law would be the same, whether the town, in making this express condition, was actuated by the one motive or the other. The town had the right to fix any condition or limitation in the offer; and the plaintiff, like any other contracting party, must bring himself within the terms of the offer, if he would have its benefits.

II. It is not claimed that the conversation with Noah Bates, one of the selectmen of the town, could be held, in the light of the recent decisions of this court, a *contract*. But it is insisted that it is a sufficient notice to the plaintiff to comply with the offer. The *intention* to comply, is not a *compliance ;* besides, the selectmen, if all had consented, could not make a different contract, or waive a material condition in the offer of the town. *Poquet* v. *North Hero*, 44 Vt. 95.

The judgment of the county court is reversed, and judgment that defendant recover its costs.